```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**WEST VIRGINIA HIGHLANDS CONSERVANCY, INC. and**
**WEST VIRGINIA RIVERS COALITION, INC., and**
**SIERRA CLUB**

        Plaintiffs,

v.                                   Civil Action No. 2:11-0524

**RANDY C. HUFFMAN,**
Secretary, West Virginia
Department of Environmental
Protection,

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the parties' joint motion to enter the August 2, 2011, proposed consent decree, filed October 3, 2011.

I.

Defendant Randy Huffman is the Secretary of the West Virginia Department of Environmental Protection ("WVDEP"). He is charged with assuring WVDEP properly administers the West Virginia/National Pollutant Discharge Elimination System ("WVPDES") program under the Clean Water Act and West Virginia law. Among other duties, Secretary Huffman is obliged to use money from WVDEP's Special Reclamation Fund to treat acid mine

drainage at coal mine sites where the applicable bonds have been forfeited and deemed insufficient to cover the costs of reclamation.

Plaintiff West Virginia Highlands Conservancy ("WVHC") is a nonprofit, statewide membership organization concerned with environmental issues. Plaintiff West Virginia Rivers Coalition Inc., is a West Virginia nonprofit organization that directs its efforts toward conservation and restoration of West Virginia's rivers and streams. Plaintiff Sierra Club is a nonprofit California corporation devoted to, inter alia, "exploring, enjoying, and protecting the wild places of the Earth . . . [and] practicing and promoting the responsible use of the Earth's resources and ecosystems . . . ." (Compl. ¶ 9).

On August 2, 2011, plaintiffs instituted this action pursuant to the provisions for "citizen suits" found in section 505(a) (33 U.S.C. § 1365(a)) of the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act. Plaintiffs allege generally that Secretary Huffman has allowed unpermitted discharges of pollutants from point sources into waters of the United States. Specifically, they assert that Secretary Huffman must treat acid mine drainage at 82 bond forfeiture sites in this district that are found in Attachment A

2

to the complaint and the proposed consent decree.  This civil action is designed to correct those unpermitted discharges.  Plaintiffs seek injunctive and declaratory relief ordering, <u>inter</u> <u>alia</u>, defendant to apply for and obtain WV/NPDES permits for the point sources.

On the same day that this action was instituted, the parties lodged a proposed consent decree pursuant to section 505(c) of the Clean Water Act.  That section provides pertinently that

> [n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3).  Consistent with the foregoing provision, the parties sent a copy of the proposed consent decree to the United States Department of Justice, which was received there by a Citizen Suit Coordinator on August 8, 2011.

On September 23, 2011, the court received from Matthew Z. Leopold, a lawyer with the Law and Policy Section for the Environment and Natural Resources Division of the Department of Justice, a notice reflecting that the United States did not object to entry of the proposed consent decree.  On October 3,

3

2011, the parties jointly moved for entry of the proposed consent decree.[1]

## II.

Our court of appeals has observed that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." Szaller v. American Nat. Red Cross, 293 F.3d 148, 152 (4th Cir. 2002) (quoting Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002)); see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland, 478 U.S. 501, 519 (1986); United States v. ITT Continental Baking Co., 420 U.S. 223, 237 n.10 (1975) (citation omitted); Alexander v. Britt, 89 F.3d 194, 199 (4th Cir. 1996).

It has expanded upon this principle in Smyth, observing that a court is expected, when presented with a proposed consent decree, to scrutinize the accord and make certain findings prior to entry:

---

[1]In that October 3, 2011, request, the parties additionally asked that they be permitted to substitute a corrected attachment for the one presently appended to the proposed consent decree. The court grants the request and has made the substitution.

>Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court.  As Judge Rubin noted in United States v. Miami,
>
>>Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should. . . examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.
>
>664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

Smyth, 282 F.3d at 280.

The standards governing consideration of a proposed consent decree are elucidated further by United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999):

>In considering whether to enter a proposed consent decree, a district court should [1] be guided by the general principle that settlements are encouraged. Nevertheless, a district court should not blindly accept the terms of a proposed settlement. See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975). Rather, before entering a consent decree the court must satisfy itself that [2] the agreement "is fair, adequate, and reasonable" and [3] "is not illegal, a product of collusion, or against the public interest." United States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991). In considering the fairness and adequacy of a proposed settlement, the court <u>must assess the strength of the plaintiff's case</u>. See Flinn, 528 F.2d at 1172-73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," <u>the court must</u>

> **take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." Id.** (internal quotation marks omitted). In particular, the "court should consider **the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement.**" Carson v. American Brands, Inc., 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, Circuit Judge, dissenting), adopted by Carson v. American Brands, Inc., 654 F.2d 300, 301 (4th Cir. 1981) (en banc)(per curiam).

Id. at 581 (emphasis supplied).

### III.

As noted in North Carolina, the court accepts the general proposition that settlements are encouraged. The consideration is especially apropos in this action, which appeared poised to consume a significant amount of time and expense by the parties, including the public fisc, along with a substantial redirection of judicial resources.

The timing of the proposed consent decree presents no problem. Plaintiffs appear to have achieved the precise relief sought in the complaint. That relief redounds in a substantial way to the general public. This is borne out by an examination of the proposed consent decree's terms. The accord sets forth a reasoned timetable for preparing an inventory of sites, their

priority ranking, the issuance of WV/NPDES permits, and providing for necessary treatment.  It also addresses the problem of new sites that result from subsequent bond forfeitures.  The reticulate process outlined in the proposed consent decree promises to remedy a longstanding source of water degradation in West Virginia.

The WVDEP is also required to use the information and analyses developed under the accord to make recommendations to the Legislature and the Special Reclamation Fund Advisory Council concerning necessary adjustments to the Special Reclamation Fund to finance the water treatment investments necessary under the proposed consent decree.  The integrity of the Special Reclamation Fund has been the subject of ongoing controversy in this district for many years.  The parties' proposal is thus indicative of a unified approach designed to address a number of ongoing water quality issues.

Based upon the foregoing, the court finds that the proposed consent decree is fair, adequate, and reasonable.  The court further finds that the accord is neither illegal nor the product of collusion and that it serves the public interest.  In view of these findings, and inasmuch as no person has opposed entry of the consent decree, the court ORDERS as follows:

1. That the proposed consent decree be, and it hereby is, entered with the court's approval this same date; and

2. That this action be, and it hereby is, dismissed and stricken from the docket, with the court retaining jurisdiction pursuant to paragraph 36 of the consent decree and any other provision therein contemplating the potential for future action by the court.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: February 10, 2012

John T. Copenhaver, Jr.
United States District Judge